There are many exceptions taken in this case which I think it is unnecessary to notice, for I suppose they would not be seriously insisted on. The prisoner being without counsel, I have felt it to be a duty to examine the record attentively, to ascertain whether there are any points which ought to have been ruled differently.
The only direct evidence of the assault was that of Mary Rittenhouse, whose credibility was assailed on the ground of her immoral character; and Mr. Holmes has pointed out some *Page 345 
important variations in her testimony since the time she gave evidence on the first trial. All the rest of the evidence on the part of the State is supplemental, and intended to be confirmatory of hers. Whether she was entitled to belief was a question altogether for the determination of the jury, and whether they have decided right or wrong, this Court cannot (512) interfere with their verdict. But the prisoner was entitled to the full benefit of that advice from the court to the jury which should enable them to weigh the evidence according to the principles which the law has established. Now, the court instructed the jury that "a general character such as that of Mary Rittenhouse was a circumstance against her credibility, and should be taken into consideration by the jury, and might, if accompanied with other circumstances against the credit of the witness, be thought by the jury to be sufficient to induce them to disregard her testimony. But that such general character was not entitled to as much weight as a general character bad in respect of truth when speaking on oath." The correctness of this direction it is not my purpose to inquire into; it is cited to show that the jury was thereby prepared to have their confidence in the credibility of the witness weakened on the score of her corruption or immorality of character. The court then proceeds to state, "that in either case, as their duty was to ascertain the truth, they might, exercising a sound discretion, reject part of a witness's testimony which they did not believe, and act on such part as they did believe." And it is in this respect I think the prisoner has not received the full benefit of such legal advice as the judge ought to have given to the jury.
I believe that all the writers on the law of evidence lay down the rule that a witness who gives false testimony as to one particular cannot be credited as to any, the maxim being "falsumin uno, falsum in omnibus." And it is very reasonable that it should be so, for the general presumption that a witness will tell the truth is overthrown when it is shown that he is capable of perjury. Our faith (says an accurate writer on evidence) cannot be partial, or fractional; where any material fact rests on the testimony of a witness, the degree of credit due to him must be ascertained, and according to the result his (513) testimony is to be credited or rejected. A witness whose misinterpretation results from mistake or infirmity, and not from design, is of course not within the operation of the principle; his integrity remains unimpeached, though his character for ability may be impaired. On this ground, therefore, and especially in a case affecting the life of a prisoner, I feel bound *Page 346 
to give my opinion in favor of a new trial. As I give no opinion upon the other objections, it will, of course, be considered that I do not regard any of them as tenable.
PER CURIAM. Judgment reversed, and a rule for a new trial made absolute.
Overruled: S. v. Williams, 47 N.C. 257.
Cited: S. v. Peace, 46 N.C. 256; Ferrall v. Broadway, 95 N.C. 557;S. v. Peak, 130 N.C. 717; S. v. March, 132 N.C. 1002.